# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| KABO TOOL COMPANY, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>PORAUTO INDUSTRIAL CO., LTD., *et al.*,<br><br>    Defendants. | Case No. 2:12-cv-01859-LDG (NJK)<br><br>**ORDER** |

    Plaintiffs, Mr. Hsien and Kabo, own the '057 patent, entitled "wrench with jaws having different tilt angles." Plaintiffs claim that defendants, Mr. Hsu, Accuaire, and Porauto, imported and sold a wrench product that infringed the '057 patent. Defendants distributed the infringing product throughout Nevada via an on-going business relationship with a Nevada corporation. Defendants move to dismiss (#10) for lack of personal jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(2), stating that the infringement took place in Taiwan, all parties are foreign subjects, and all evidence and witnesses are in Taiwan. Plaintiffs oppose the defendants' Motion to Dismiss (#12), arguing the infringement took place in Nevada, and the plaintiffs wish to enforce the patent under

the laws of the country that issued the patent. Having read and considered the papers and complaint, the Court will DENY the defendants' Motion to Dismiss.

## Motion to Dismiss

Motion to dismiss standard requires courts to engage in a two-part analysis. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). First, the courts accept only non-conclusory allegations as true. *Iqbal*, 556 U.S. at 677. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555). However, the Court must draw all reasonable inferences in favor of the plaintiff. *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a probability requirement, but is more than sheer possibility. *Id.*

## Background

Kabo Tool Company ("Kabo" or "plaintiff") is a Taiwan corporation that manufactures electrical, hydraulic, mechanical, and other industrial tools, including the wrench product at issue. Chih-Ching Hsien ("Mr. Hsien" or "plaintiff") is a citizen of Taiwan and the CEO of Kabo. Mr. Hsien was duly assigned U.S. Patent No. 7,066,057 ("the '057 patent"), entitled "Wrench with jaws having different tilt angles." Mr. Hsien then assigned the '057 patent to Kabo.

Plaintiffs claim that Chih-Hsiang Hsu ("Mr. Hsu"), Accuaire Corp. ("Accuaire"), and Porauto Industrial Co., Ltd. ("Porauto") (collectively, "defendants") infringed patent '057 by importing and selling wrench products, which embody patent '057 ("infringing product"). Both Porauto and Accuaire are Taiwan corporations. Neither Porauto nor Accuaire is incorporated in Nevada or the United States. However, Porauto and Accuaire maintain an ongoing business relationship spanning at least 10 years with JS Product, Inc. ("JSP"). JSP is a Nevada corporation with its principal place of business in Las Vegas, NV. JSP distributes and sells wrench products throughout Nevada. Through JSP, Accuaire and Porauto distribute numerous products, including the infringing product. Accuaire, Porauto, and JSP frequently, often daily, communicate regarding ordering, sale, and distribution of numerous products, including the infringing product. Plaintiffs further allege that defendants have taken active steps to facilitate direct infringement of the '057 patent in Nevada. After plaintiffs sought an injunction in Taiwan, defendants posted a $15 million New Taiwan Dollar Bond (approximately $515,000 U.S. dollars) to keep shipments flowing to JSP, specifically ensuring that shipments of the infringing product would not be a problem for the fourth quarter of 2011.

Mr. Hsu, a citizen of Taiwan, is the Sole Director of Accuaire and the Chairman of the Board of Porauto. Mr. Hsu is not a resident of Nevada or the United States. However, Mr. Hsu has been personally involved with JSP. Mr. Hsu handles much of JSP's business with product manufacturers in Taiwan. Mr. Hsu provided advice to JSP regarding a previous infringement claim brought by Kabo against JSP. Mr. Hsu regularly travels to Las Vegas on business-related activity to meet with JSP and for the AAPEX/SEMA Show.

While Mr. Hsu was physically present in Nevada, plaintiffs served him with a Summons and the Complaint both personally and as an agent for Accuaire and Porauto. Defendants move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(2), stating that the infringement took place in Taiwan, both parties

3

1  are subjects of Taiwan, and all the evidence and witnesses are in Taiwan. Plaintiffs oppose
2  the defendants' Motion to Dismiss since the infringement took place in Nevada, and the
3  plaintiffs wish to enforce the patent under the laws of the country that issued the patent.

## **Personal Jurisdiction**

Rule 12(b)(2) provides that a court may dismiss a complaint for "lack of jurisdiction over the person." Fed. R. Civ. Proc. 12(b)(2). Since Mr. Hsu, Accuaire, and Porauto move to dismiss the complaint for lack of personal jurisdiction, Mr. Hsien and Kabo have the burden of showing that jurisdiction in this Court is proper under Nevada's "long-arm statute" and comports with Due Process under the US Constitution. *Rio Properties Inc. v. Rio Intern. Interlink*, 284 F. 3d 1007, 1019 (9th Cir. 2002); Fed.Rules Civ.Proc.Rule 4(k)(1)(A). Nevada's long-arm statute allows jurisdiction in Nevada courts "over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States." NRS 14.065(1); *Graziose v. American Home Products Corp.*, 161 F. Supp.2d 1149, 1152 (D. Nev. 2001). The statute has been "liberally construed to reach the outer limits of federal Constitutional Due Process." *Id.* Constitutional Due Process requires that, "in order to subject a defendant to a judgment *in personum*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The assertion of personal jurisdiction can be satisfied only if Mr. Hsu, Accuaire, and Porauto individually had sufficient minimum contacts with Nevada such that bringing suit in the district of Nevada would not offend the "traditional notions of fair play and substantial justice." *Id.* Defendants' contacts with Nevada should be analyzed in regard to each party's contacts with Nevada. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1130 (9th Cir. 2003).

4

Subject matter jurisdiction is established under 28 U.S.C. § 1338 (a) - "the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." In the complaint, the plaintiffs assert that Kabo is the assigned owner of the '057 patent and the defendants infringed that patent. In support of this claim, plaintiffs attached a copy of the patent '057 paperwork to the complaint.

As a factual basis for allegations made in the complaint, plaintiffs supplied an affidavit regarding discovery obtained in the matter of *JS Products, Inc. v. Kabo Tool Company, et al*. Case No. 2:11-cv-01856-RJC-(GWH), United States District Court, District of Nevada. This Court may consider evidence presented in the plaintiffs' affidavits to assist in its determination. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Since this Court will consider the affidavit, the plaintiffs need only make a prima facie showing of jurisdiction to survive the defendants' motion to dismiss. *Harris*, 328 F.3d at 1128. The analysis of contacts for personal jurisdiction may be founded on specific or general jurisdiction. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (1998).

### General Jurisdiction

For general jurisdiction to exist, the defendants must engage in continuous and systematic general business contacts that approximate physical presence in Nevada. *Heliocopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Plaintiffs do not claim that general jurisdiction in Nevada is reasonable or proper for Mr. Hsu, Accuaire, or Porauto.

### Specific Jurisdiction

Plaintiffs have shown a prima facie claim for specific jurisdiction in Nevada. The Ninth Circuit established a three-prong test for analyzing a claim of specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of

5

|   |     |                                                                                                              |
|---|-----|--------------------------------------------------------------------------------------------------------------|
|   |     | conducting activities in the forum, thereby invoking the benefits and protections of its laws;              |
|   | (2) | The claim must be one which arises out of or relates to the defendant's forum-related activities and;       |
|   | (3) | The exercise of jurisdiction must comport with fair play and substantial justice, that is, it must be reasonable. |

Schwarzenegger v. Fred Martin Motor Co. 374 F.3d 797, 802 (9th Cir. 2004).

The plaintiffs bear the burden of satisfying the first two prongs, then the burden shifts to the defendants to "present a compelling case" that the exercise of jurisdiction in Nevada would not be reasonable. *Bancroft & Masters v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

### Purposeful Availment or Purposeful Direction

"Purposeful availment" is often used for both purposeful availment and purposeful direction, but the two are distinct concepts. *Schwarzenegger*, 374 F.3d at 802 (citing *Harris*, 328 F.3d at 1130). Purposeful availment is most often used in suits regarding contracts whereas purposeful direction is associated with tort suits. *Id.* Since patent infringement cases are most akin to tort actions, purposeful direction is more appropriate in determining the defendants' contacts with Nevada. *Panavision*, 141 F.3d at 1321.

Purposeful direction looks for evidence that the defendants' actions outside Nevada are directed at Nevada, such as distributing goods in Nevada that originated in Taiwan. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984). The Supreme Court has held that Due Process permits the exercise of personal jurisdiction over a defendant who "purposefully direct[s]" his activities at residents of a forum, even in the "absence of physical contacts" with the forum. *Burger King v. Rudzewiz*, 471 U.S. 462, 476 (1985)(citing *Keeton*, 465 U.S. at 774-75). Purposeful direction is evaluated under the three-part "effects" test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 787-91 (1984). The *Calder* effects test is summarized:

6

(a) Defendant committed intentional acts;
(b) expressly aimed at the forum state;
(c) causing harm, the brunt of which is suffered – and which the defendant knows is likely to be suffered – in the forum state.

Harris, 328 F.3d at 1131.

(a) *Committed an intentional act*

The Restatement (Second) of Torts defines "act" to have specialized meaning denoting an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended. §2, 1964; *Schwarzenegger*, 374 F.3d at 806. In the Complaint, the plaintiffs claim that Accuaire, and Porauto committed an intentional act directed at Nevada by placing the infringing product into the stream of commerce, via an established distribution channel, with the knowledge that such products are sold in Nevada. Under the definition given in Restatement (Second) of Torts, the intentional act is completed once the external will of Accuaire and Porauto is manifest by entering the infringing product into the stream of commerce with knowledge that it would be sold or distributed in Nevada.

Mr. Hsu committed intentional acts by becoming personally involved with JSP in furtherance of the infringement. Mr. Hsu personally advised JSP with regard to a lawsuit for patent '057 infringement brought by Kabo in Nevada. The result of Mr. Hsu's advice is irrelevant. What is relevant is that Mr. Hsu intentionally acted with the purpose of influencing business in Nevada.

(b) *Expressly aimed at the forum state*

In the "express aiming" analysis, the act must be a deliberate attempt to cause harm in the forum state and not an untargeted negligence. *Calder*, 465 U.S. at 789. Plaintiffs allege that Accuaire and Porauto expressly aimed at Nevada by creating a direct channel for distributing the infringing product in Nevada via JSP. Creating a distribution channel for a product is a deliberate act intended to target Nevada as a specific market. By cultivating

7

business relationships with a Nevada corporation, defendants expressly aimed at Nevada as a market. Further, Accuaire and Porauto have maintained a 10-year business relationship with JSP. Conducting on-going business directly with JSP is not untargeted negligence, but express aiming at Nevada. Plaintiffs also allege that defendants posted a $15 million New Taiwan Dollar Bond (approximately $515,000 U.S. dollars) in Taiwan to keep shipments of infringing product flowing to JSP even after plaintiffs began legal proceedings to obtain an injunction. Defendants then sent a communication to JSP ensuring shipments of the infringing product. Posting a bond and ensuring shipment of product to a Nevada corporation indicate strongly that defendants deliberately targeted or expressly aimed their activities at Nevada.

The plaintiffs' affidavit states that Mr. Hsu was personally involved with JSP and provided advice to JSP regarding a pending lawsuit in Nevada pertaining to the '057 patent. Mr. Hsu expressly aimed at Nevada when he gave advice to JSP regarding arguments in the lawsuit over '057 patent infringement brought by plaintiffs. Mr. Hsu also personally conducted business in Nevada in furtherance of getting the infringing product into the Nevada market.

(c) *Causing harm that the defendant knows is likely to be suffered in the forum state*

If defendants were aware they were infringing the '057 patent and continued to commit acts in Nevada furthering that infringement, then the defendants would have caused harm likely to be suffered in Nevada. Plaintiffs allege that Accuaire and Porauto were aware of the infringement claims, but showed intent to continue the infringement by posting a bond in order to ensure shipments of the infringing product to Nevada. Mr. Hsu was personally aware of the claims of infringement, and he intentionally acted to continue harm to plaintiffs by giving advice to JSP in furtherance of the infringement.

(2) Forum Related Activities

When determining whether the claims arise out of forum related activity, the Ninth Circuit has established a "but for" test. *Ballard v. Savage*, 65 F.3d 1495, 1500 (1995)(citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377(9th Cir. 1990), *rev on other grounds*, 499 U.S. 585 (1991)). The plaintiffs must show that their claim could not have arisen "but for" Mr. Hsu's, Accuaire's, or Porauto's contacts with Nevada. *Id.* It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). The manufacturing of the infringing product in Taiwan is not an infringement of a U.S. patent. On the other hand, importing infringing product into the United States, without authority, is an infringement of an exclusive right. *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1367 (2013); 35 U.S.C. §271(a). Plaintiffs allege that, through their connection with JSP, Accuaire and Porauto distribute the infringing product throughout Nevada. "But for" these actions, there would have been no infringement of the '057 patent in Nevada. Mr. Hsu giving advice to JSP regarding the lawsuit, may not have independently infringed the patent, but it was an act intended to further or allow the infringement to take place. Personally conducting business on behalf of Accuaire and Porauto at the SEMA Show and with JSP in order to create channels of distribution in Nevada, would be a "but for" cause of infringement. Since Mr. Hsu, Accuaire, and Porauto have offered no factual basis to refute the plaintiffs' accusation, this Court will construe the facts in the light most favorable to the plaintiffs.

(3) Reasonableness

Once the plaintiffs meet the first two prongs, the burden of proof shifts to the defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 476-77. In addressing the reasonableness question, this Court will consider seven factors:

(i) Extent of defendant's purposeful interjection (ii) Burden on the defendant in defending the forum, (iii) Extent of conflict with the sovereignty of the Defendant's state, (iv) The forum state's interest in adjudicating the dispute, (v) The most efficient judicial resolution of the controversy, (vi) The importance of the forum to plaintiff's interest in convenient and effective relief, and (vii) Existence of an alternative forum.

*Harris*, 328 F.3d at 1132. No single factor is dispositive; this Court must balance all seven factors. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (1993).

### (i) Purposeful Interjection

Purposeful interjection is still a factor in determining overall reasonableness even though plaintiffs have established minimum contacts. *Harris*, 328 F.3d at 1132 (citing *Ins. Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)). As detailed previously, Mr. Hsu's, Accuaire's, and Porauto's contacts with Nevada are sufficient in regard to the plaintiffs' claim. Accuaire and Porauto have an on-going business relationship with a Nevada corporation to distribute the infringing product throughout Nevada. Mr. Hsu is personally involved with JSP to the point that they solicited his advice regarding lawsuits involving the infringing product. Defendants paid a significant sum to ensure that shipments of the infringing product would continue to be available to the Nevada corporation. This factor falls in favor of the plaintiff.

### (ii) Defendant's Burden in Litigating

"The unique burden placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 114 (1987). Defendants state that if they are forced to litigate in Nevada, it would be a significant burden. Defendants claim that all the evidence and witnesses are in Taiwan. Further, all the documentation is in Chinese, the native language of both the plaintiffs and defendants. Language is a significant barrier. However, since infringement of a U.S. patent does not happen until an infringing action takes place in the United States,

not all evidence or documentation would be in Taiwan. 28 U.S.C. § 1400(b). Some evidence of the infringement would be in the United States. Nonetheless, since the Supreme Court in Asahi has given added weight to the burden of defending oneself in a foreign land, this factor falls to the defendants.

### (iii) Sovereignty

"Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Although this factor is important, it is not controlling. *Gates LearJet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). Defendants claim that Taiwan has the greater interest in litigating conflicts between citizens of Taiwan. Generally, that is true. However, the Complaint is in regard to a U.S. patent and conduct that took place within the United States. Although the claim could be brought in a Taiwan court, Taiwan does not have a significant interest in the resolution of the claim. This factor favors the plaintiffs.

### (iv) Forum State's Interest

A forum state has an interest in seeking redress for harms done within the forum. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (citing *Sinatra*, 854 F.2d at 1200). The '057 patent is a U.S. patent and the United States has an interest in protecting patents issued by the United States. The infringing conduct took place in Nevada, and Nevada has an interest is seeking redress for harms taking place in Nevada. This factor falls in favor of the plaintiffs.

### (v) Efficient Resolution

To determine which forum could most efficiently resolve the dispute, courts look to the location of evidence and witnesses. *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). This factor is not weighed as heavily anymore with the advances in communication and travel. *Id.*, *Panavision*, 141 F.3d at 1323-24. As noted

previously, defendants claim that all the evidence, witnesses, and documentation are in Taiwan. However, since the infringement happened in the United States, a significant portion of the evidence must be in the United States. Defending a claim in Nevada could increase the burden on the defendants. However, defendants have shown a previous ability to travel to Nevada to conduct business and transmit information. This factor, at best, comes out neutrally.

### (vi) Convenient and Effective Relief for Plaintiff

If Nevada were not a proper forum for litigation, the plaintiffs would be forced to litigate in Taiwan. This would not present an obvious inconvenience since Taiwan is the home of both the plaintiffs and the defendants. This factor falls in favor of the defendants.

### (vii) Alternative Forum

The burden of proving the unavailability of an alternative forum is on the plaintiffs. *Core-Vent*, 11 F.3d at 1490. Plaintiffs have not demonstrated the unavailability of an alternative forum. The only evidence provided by the plaintiffs is in the affidavit where they state that they are unaware of another United States jurisdiction that would have personal jurisdiction over the defendants. Defendants assert that Taiwan is an acceptable jurisdiction. This factor falls more in favor of defendants.

Overall, with all seven factors weighed and considered, the defendants have not made a compelling case showing that jurisdiction in Nevada would create an unreasonable burden. While jurisdiction in Nevada may not be as convenient to the defendants, it does not present an unreasonable burden. The defendants have been conducting business in Nevada for over 10 years. If the defendants have the ability to sufficiently conduct business, they also have the ability to defend their actions in Nevada.

The Court finds that the exercise of personal jurisdiction over the defendants is appropriate.

1  Accordingly, for good cause shown,

3  THE COURT **ORDERS** that Defendants' Motion to Dismiss for Lack of Personal
4  Jurisdiction (#10) is DENIED.

6  DATED this __20__ day of September, 2013.

_____
Lloyd D. George
United States District Judge